Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
lukebusby@pm.me

Lauren Gorman, Esq.
Nevada State Bar #11580
275 Hill Street, Suite 248
Reno, Nevada 89501
(775) 742-6129
lgorman@laurengormanlaw.com

*Attorneys for the Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

ANDREW GEORGE ASUIT, II, an individual,

Plaintiff,

v.

STEVEN WELIN, an individual; and THE CITY OF RENO, a political subdivision of the State of Nevada,

Defendants.

Case No.:  3:26-cv-447

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

COMES NOW, ANDREW GEORGE ASUIT, II ("Asuit" or "Plaintiff"), by and through the undersigned counsel, and files the following complaint seeking redress for the violation

by STEVEN WELIN ("Welin") and THE CITY OF RENO of Plaintiff's rights under the Constitution of the United States and the Nevada Constitution..

**Jurisdiction and Venue**

1.      This action arises under 42 U.S.C. § 1983, the United States Constitution, and the Nevada Constitution. This Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331, 1343, 1367, 2201 and 42 U.S.C. Sections 1983 and 1988. The Court has personal jurisdiction over the Defendants because the alleged incidents described below occurred within this District.

2.      Venue is proper pursuant to 28 U.S.C. Section 1391 in the District of Nevada because the acts giving rise to the Plaintiff's claims occurred in this District..

**Parties**

3.      Asuit currently resides in Lander County, Nevada. At all relevant times, Asuit resided in Washoe County, Nevada.

4.      Welin was, at all relevant times, a Police Officer employed by the City of Reno. Welin was at all times relevant herein acting under color of state law as described below.

5.      The City of Reno is, and at all relevant times was, a political subdivision of the State of Nevada, organized and existing under the laws of the State of Nevada. Under its authority, the City of Reno operates the Reno Police Department ("RPD"), which employed Welin at all times relevant to this Complaint.

6.      At all relevant times, the City of Reno was responsible for the hiring, training, supervision, retention, and discipline of Welin, and was the employer of Welin, who was acting within the course and scope of his employment with the City of Reno.

7.      Welin is sued in his individual capacity. At all times relevant hereto, Welin was

2

acting within the scope of his employment with the City of Reno at the time of the incidents complained of herein.

**Allegations of Fact**

8.      On July 20, 2024, at approximately 04:30 a.m., while being driven in a car by Asuit, Bernadette Obrian, Asuit's wife, placed a 911 call reporting a domestic disturbance.

9.      Asuit had no knowledge that Bernadette Obrian had placed this call. Bernadette Obrian made the call without Asuit's awareness, and at no point during the events that followed did Asuit learn that she had contacted law enforcement.

10.      Because Asuit was unaware that any call to 911 had been made, he had no reason to believe that he was the subject of any police response or investigation.

11.      In response to that call, Welin and other RPD officers, including Officers Connor Kurze, Kody Sackett, and Nicholas Rosas, responded to the area. As the officers responded, Reno Dispatch provided continuous updates regarding the location of the vehicle Asuit was driving.

12.      At all relevant times, Asuit was unaware that Bernadette Obrian had called 911, was unaware of the nature of any report that had been made, and was unaware that law enforcement officers were attempting to stop the vehicle he was driving.

13.      When the vehicle was located traveling on Leadership Parkway near West Keystone Trailhead, in Reno, Nevada, Officer Kurze positioned his patrol vehicle in front of the gold Lincoln Asuit was driving.

14.      Because Asuit did not know that Bernadette Obrian had called 911 and had no reason to believe he was the subject of a police stop, he did not understand why the officers were present or why their vehicles were in front of and behind his car.

15. Asuit did not know that he was being pulled over, believing instead that the officers were attempting to pass him to reach an adjacent location, and pulled over to allow them to pass.

16. Asuit did not realize that he was the subject of the stop until Officer Kurze exited his patrol vehicle, placed Asuit at gunpoint, and gave him commands to stop the car.

17. Officer Kurze and other officers then approached the vehicle and began giving Asuit verbal commands to show his hands and exit the vehicle.

18. As the officers approached, Asuit was attempting to bring the vehicle to a stop and place it in park, and he was attempting to comply with the officers' commands.

19. The window of the driver's side of the vehicle was open approximately two-thirds of the way. Asuit did not have an adequate opportunity to bring the vehicle to a complete stop and place it in park before the officers reached the vehicle and began using force against him.

20. Despite Asuit's attempt to comply, officers opened the driver's side door.

21. Before Asuit could exit the vehicle, Officer Sackett and other officers went hands-on with Asuit and attempted to pull him from the vehicle.

22. The RPD reports authored in connection with this incident attempt to characterize Asuit's conduct as aggressive resistance and as a refusal to obey commands.

23. This characterization is contradicted by the surrounding facts. Asuit did not know that he was the subject of a police stop, did not know why officers had surrounded and approached his vehicle, and was confronted with officers shouting commands at gunpoint within seconds of any opportunity to understand what was occurring.

24. What the reports describe as Asuit "not listening" and "physically resisting"

4

was, in truth and in fact, the confusion and involuntary reaction of a man who did not know what was happening, who was attempting to put his vehicle in park, and who was attempting to comply with rapidly issued commands he had no fair opportunity to follow.

25.    Any movement or reaction by Asuit did not constitute aggression and did not justify the application of force against him.

26.    While Asuit was still in or partially in the vehicle and the officers were attempting to remove him, Welin deployed his Taser against Asuit's upper rear torso without Asuit posing any immediate threat of serious harm to the officers.

27.    Asuit was not armed with a weapon, was not actively assaulting officers, and the initial Taser deployment did not incapacitate him.

28.    Welin then deployed his Taser a second time, this time attempting to strike Asuit's left leg and the area near the belt line. This second deployment incapacitated Asuit. At this point, other officers were able to remove Asuit from the vehicle.

29.    Asuit's companion, Bernadette Obrian, was screaming during this incident statements to the effect of "stop you're killing him."

30.    Immediately following the deployment of the second Taser, Asuit suffered a stroke.

31.    Asuit was transported by REMSA to Renown Regional Medical Center for emergency medical treatment. Asuit was diagnosed as having suffered a stroke.

32.    Asuit required immediate medical intervention and hospitalization as a result of the stroke he sustained in connection with the force used against him by Welin.

33.    The stroke and its sequelae have caused Asuit serious and lasting physical injury.

34. In a report authored by Officer Jason Haar, dated September 24, 2024, Officer Haar acknowledged that, upon reviewing the Axon video of this incident, he discovered that he had not activated his body worn camera when he exited his patrol vehicle and made contact with Asuit's vehicle.

35. As a result, the officers' use of force against Asuit was not captured on Officer Haar's body-worn camera. In the same report, Officer Haar stated that he did not use force against Asuit and gave only verbal commands, and that once he realized Asuit was having a medical episode, he instructed another officer to request REMSA Code 3.

36. Asuit has made repeated requests to the City of Reno for copies of the body worn camera footage of the incident captured by the responding officers. In response to these requests, the City of Reno has demanded large sums of money as a condition of producing the requested footage, effectively impeding Asuit's ability to obtain video evidence of the officers' use of force against him.

37. No criminal charges were ever filed against Asuit.

38. The Washoe County District Attorney issued a No-Issue Memorandum dated July 30, 2024, and another No-Issue Memorandum dated December 5, 2024, both indicating that no criminal complaint would issue against Asuit due to insufficient evidence to prove any charges related to the July 20, 2024 incident beyond a reasonable doubt.

39. The deployment of the Taser against Asuit, and its repeated deployment, was objectively unreasonable. Welin afforded Asuit no reasonable opportunity to comply before deploying a Taser.

40. At the time, Asuit was unarmed, was not assaulting any officer, and posed no immediate threat to anyone.

41.     At the time of Asuit's encounter with the Defendants, it was clearly established that using a Taser without adequate warning against a suspect who had ceased actively resisting was objectively unreasonable, Emmett v. Armstrong, 973 F.3d 1127, 1130 (10th Cir. 2020), and that the gratuitous or excessive use of a Taser violates a clearly established constitutional right, Palma v. Johns, 27 F.4th 419, 423 (6th Cir. 2022)..

### First Cause of Action:
### Excessive Force in Violation of the Fourth Amendment Under 42 U.S.C. § 1983
### (Against Welin)

42.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

43.     The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure in their persons against unreasonable seizures, which includes the right to be free from the use of excessive force by law enforcement officers.

44.     At the time of the incident, the right to be free from the use of excessive force by law enforcement, including the right to be free from force applied against a person who is attempting to comply with officers' commands and who does not pose an immediate threat of serious harm, was a clearly established constitutional right.

45.     Under the totality of the facts and circumstances, the force used by Welin against Asuit was objectively unreasonable.

46.     The circumstances included the following: Asuit was unarmed, he was attempting to comply with officers' commands to put the vehicle in park, he posed no immediate threat of serious bodily harm or death to the officers, and the Taser deployments by Welin were excessive given the circumstances.

47.     Welin's deployment of the Taser against Asuit, first to the upper rear torso and

then to the left leg and belt area, while Asuit was being physically restrained by other officers and was attempting to comply with commands, constitutes excessive force in violation of the Fourth Amendment.

48.     The deployment of the Taser resulted in Asuit suffering a stroke, a serious medical emergency and permanent injury.

49.     As a direct and proximate result of the unlawful and excessive force used by Welin, Asuit suffered severe physical injury in the form of a stroke, permanent neurological damage, severe mental anguish, and emotional trauma in connection with the deprivation of his constitutional rights guaranteed by the Fourth Amendment of the United States Constitution.

50.     The acts of Welin described above were intentional, wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages. In addition to the relief requested above, Plaintiff requests relief as described in the prayer for relief below.

51.     The force used against Asuit was non-trivial. The Ninth Circuit has recognized that a Taser affects a person's bodily functions and physical integrity in ways that distinguish it from other forms of nonlethal force, and it therefore qualifies as an intermediate level of force; repeated discharges may elevate that level further. Jones v. Las Vegas Metro. Police Dep't, 873 F.3d 1123, 1126 (9th Cir. 2017).

**Second Cause of Action:**
**Violation of Nevada Constitution Article 1, Section 18**
**(Against Welin and the City of Reno)**

52.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

53.     Article 1, Section 18 of the Nevada Constitution guarantees the right of

people to be secure in their persons, papers and effects against unreasonable searches and seizures, which includes the right to be free from the use of excessive force by law enforcement officers.

54. Welin's actions in using excessive force against Asuit, as described above, violated Asuit's rights under the Nevada Constitution.

55. Through the doctrine of respondeat superior, Defendant City of Reno is liable as a principal for all torts committed by its employees and agents acting within the course and scope of their employment, including the misconduct by Welin described above.

56. As a direct and proximate result of these violations, Plaintiff has suffered damages including but not limited to violation of his constitutional rights, physical injury, emotional distress, and mental anguish.

57. The acts of Welin described above were intentional, wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages.

58. In addition to the relief requested above, Plaintiff requests relief as described in the prayer for relief below.

**Third Cause of Action:**
**Assault and Battery**
**(Against Welin and the City of Reno)**

59. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

60. Welin intentionally placed Asuit in reasonable apprehension of immediate harmful and offensive contact when Welin deployed a Taser against Asuit while he was in the vehicle and attempting to comply with officers' commands.

61. Welin intentionally subjected Asuit to harmful and offensive contact without

his consent, including the repeated deployment of a Taser against Asuit by Welin while Asuit was being physically restrained and was attempting to comply with officers' commands.

62.    The force used by Welin against Asuit was not reasonably necessary under the circumstances and was objectively unreasonable, particularly in light of Asuit's attempt to comply with commands, his lack of weapons, and his lack of threat to officer safety.

63.    Through the doctrine of respondeat superior, Defendant City of Reno is liable as a principal for all torts committed by its employees and agents acting within the course and scope of their employment, including the assault and battery committed by Welin as described above.

64.    As a direct and proximate result of the assault and battery committed by Welin, Asuit suffered severe physical injury in the form of a stroke and permanent neurological damage, as well as severe mental anguish and emotional trauma.

65.    The acts of Welin described above were intentional, wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages against Welin.

66.    In addition to the relief requested above, Plaintiff requests relief as described in the prayer for relief below.

WHEREFORE, the Plaintiff requests that this Court:

(a) Enter a declaratory judgment that the actions complained of herein are unlawful and violate the United States Constitution and Nevada law;

(b) Order Defendants to pay compensatory damages for the Plaintiff's physical injuries, including but not limited to the stroke and permanent neurological damage resulting therefrom, emotional distress, and mental anguish, in amounts to be proven at

trial;

(c) Order the Officer Defendants to pay exemplary and punitive damages;

(d) Order Defendants to pay attorneys' fees and costs of the action pursuant to 42 U.S.C. § 1988;

(e) Order Defendants to pay interest at the legal rate on such damages as appropriate; and

(f) Grant any further relief that the Court deems just and proper.

Dated: Jun 13, 2026

By: _/s/ Luke Busby, Esq._

Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
lukebusby@pm.me

Lauren Gorman, Esq.
Nevada State Bar #11580
275 Hill Street, Suite 248
Reno, Nevada 89501
(775) 742-6129
lgorman@laurengormanlaw.com

*Attorneys for the Plaintiff*